# United States District Court

for the District of

Massachusetts – Worcester Division

FILED IN CLERKS OFFICE

APR 24 '26 AM10:19 USDC MA

---------------------------------------

| | | |
|---|---|---|
| Paul C. Nordberg, Plaintiff , | ) | |
| **Pro-se** | ) | Case No. |
| -vs- | ) | _____ |
| The Massachusetts  Teachers | ) | |
| Retirement System | ) | |
| and | ) | Plaintiff Demands a Jury |
| The United States Equal | ) | Trial on all Issues Which |
| Employment Opportunity | ) | are Triable Before a Jury |
| Commission | ) | |

---------------------------------------------

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

## AND REQUEST FOR THE ISSUANCE OF A WRIT OF MANDAMUS TO THE UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## I.    The Parties to this Complaint are

### A. The Plaintiff

Paul C. Nordberg, ***Pro se***

3 Overhill Drive

Auburn, MA 01501-2406

Telephone Number:  (508) 523-2794

Email:  pcnordberg@gmail.com

### B.  The Defendants

The Massachusetts Teachers Retirement System

Suite 210

500 Rutherford Avenue

Charlestown, MA 02129

Telephone Number:  (617) 679-6877

Email: _____

and

The United States Equal Employment Opportunity

Commission

John F. Kennedy Federal Building – Room 475

Boston, MA 02203-0506

Telephone:  (617) 565-4805

Email _____

## II.   Basis for Jurisdiction

- This action is brought for  employment discrimination pursuant to the *Age Discrimination in Employment Act* (28 U.S.C. §§ 621-634)

- It is also brought pursuant to Section #1 and Section #5 of the 14th Amendment to the United States Constitution

- It is also brought pursuant the Massachusetts General Laws, Chapter 151B

    - It is also brought pursuant to MGL Chapter 35 §2

- It is also brought pursuant to Article 10 of the Massachusetts State Constitution

- It is also brought pursuant to Article 11 of the Massachusetts State Constitution

- It is also brought pursuant to Article 29 of the Massachusetts State Constitution

- It is also brought pursuant to Article 106 of the Massachusetts State Constitution

This Complaint also seeks the issuance of a writ of mandamus to the United States Equal Employment Opportunity Commission ("EEOC") pursuant to 28 U.S.C. §1361, ordering the EEOC to deal with the substance on my complaint under 28 U.S.C. §§ 621-634, Massachusetts General Laws Chapter 32 §5, and  Massachusetts General Laws, Chapter 151B.

III.  **Statement of claim:**  The Massachusetts Teachers Retirement System (the "MTRS") administers the pension plan under its supervision in a manner which systematically discriminates against any and all of its members who work beyond their 65th birthday(s) before retiring.

This conduct violates and is contrary to the provisions of:

- to the *Age Discrimination in Employment Act* (28 U.S.C. §§ 621-634)
- Massachusetts General Law Chapter 151B
- Section #1 and Section #5 of the 14th Amendment to the United States Constitution
- Various provisions of the Declaration of Rights contained in the Constitution of the Commonwealth of Massachusetts, which taken together, stand for a

system of government which treats all of its citizens equally.

## IV.   The relevant facts of this case are summarized below.

1. I am a member of the MTRS.  I first joined in January, 2005, when I accepted employment with the *Collaborative for Educational Services* ("CES"), of Northampton, Massachusetts.  CES was then known as the *Hampshire Educational Collaborative* ("HEC"). CES/HEC have continuously held the contract with the Massachusetts Department of Youth Services ("DYS") to provide educational services to young people in the care and/or custody of DYS.

2. I was born on April 23, 1946.  I am currently eighty (80) years old.

3. Massachusetts General Law Chapter 32 §5 sets forth the methodology for calculating annual pension levels for educators, who belong to the MTRS and are retiring.  A key factor in the calculation process is the "age multiplier," the benefit of which each retiree is entitled to, depending on his or her age at retirement:

| AGE AT RETIREMENT[i1] | AGE MULTIPLIER |
|---|---|
| 55 | 1.5 |
| 56 | 1.6 |
| 57 | 1.7 |
| 58 | 1.8 |
| 59 | 1.9 |

---

[1] See Attachment "A," hereto

| | |
|---|---|
| 60 | 2.0 |
| 61 | 2.1 |
| 62 | 2.2 |
| 63 | 2.3 |
| 64 | 2.4 |
| 65 | **2.5** |
| 66 | **2.5** |
| 67 | **2.5** |
| 68 | **2.5** |
| 69 | **2.5** |
| 70 | **2.5** |
| 71 | **2.5** |
| 72 | **2.5** |
| 73 | **2.5** |
| 74 | **2.5** |
| 75 | **2.5** |
| 76 | **2.5** |
| 77 | **2.5** |
| 78 | **2.5** |
| 79 | **2.5** |
| 80 | **2.5** |

4. As is provided for in MGL 32 §5, the MTRS calculates the percentage of a member's pensionable salary which will be that MTRS member's annual pension benefit, by multiplying the retiree's years of membership in, and contribution to, the MTRS pension plan by the *"age multiplier"* which matches the age at which the person is retiring. How the *age multiplier* affects the pension benefit of a teacher who is retiring with twenty (20) years of membership in the MTRS is explained below.

- If a person with 20 years' membership in the MTRS is retiring at age 55; his/her age multiplier is 1.5. When his/her 20 years of service is multiplied by 1.5; that retiree is entitled to a pension in the amount of 30% on his/her average, pensionable, salary.

- If a person with 20 years' membership in the MTRS is retiring at age 60; his/her age multiplier is 2.0. When his/her 20 years of service is multiplied by 2.0; that retiree is entitled to a pension in the amount of 40% on his/her average, pensionable, salary.

- If a person with 20 years' membership in the MTRS is retiring at age 65; his/her age multiplier is 2.5. When his/her 20 years of service is multiplied by 2.5; that retiree is entitled to a pension in the amount of 50% on his/her average, pensionable, salary.

- If a person with 20 years' membership in the MTRS is retiring at age 70; his/her age multiplier is 2.5. When his/her 20 years of service is multiplied by 2.5; that retiree is entitled to a pension in the amount of 50% on his/her average, pensionable, salary.

- If a person with 20 years' membership in the MTRS is retiring at age 75; his/her age multiplier is 2.5. When his/her 20 years of service is multiplied by 2.5; that retiree is entitled to a pension in the amount of 50% on his/her average, pensionable, salary

- If a person with 20 years' membership in the MTRS is retiring at age 80; his/her age multiplier is 2.5. When his/her 20 years of service is multiplied by 2.5; that retiree is entitled to a pension in the amount of 50% on his/her average, pensionable, salary

5. From age fifty-five (55) to age sixty-five (65) the *"age multiplier,"* used in the calculation increases annually.  This recognizes and provides adjustment for a simple reality – for each year additional year an MTRS member continues to work, before retiring, he/she will ultimately receive his/her pension benefit for one year less than would have been the case if he/she retired a year earlier.

6. After age sixty-five (65) this common place adjustment ceases to operate.  The cessation of the annual increases in the _*"age multiplier,"* after an MTRS member reaches age 65, is a clear and classic example of age discrimination.

7. The chart below lists the average remaining life expectancy of a man, at the ages listed.  The data comes from the Social Security Administration [URL: https://www.ssa.gov/oact/STATS/table4c6.html]

| AGE AT RETIREMEMT | REMAINING LIFE EXPECTANCY |
|---|---|
| 55 | 24.94 years |
| 60 | 21.08 years |
| 65 | 17.48 years |
| 70 | 14.09 years |
| 75 | 10.92 years |
| 80 | 8.11 years |

8.  We can readily see the systematic age discrimination, if we examine the hypothetical of six (6) MTRS employees retiring:

    1.  Each with twenty years of membership in the MTRS;
    2.  Each with a pensionable salary of $80,000;
    3.  Each with an identical hiring date, and each having earned the same salary at all times during his/her employment and membership is the MTRS
    4.  Each has made identical contributions to the MTRS, both in the amount paid and date(s) on which such payments were made; and
    5.  Each retires at the age(s) shown in the chart below

| (1) Age at retirement | (2) Number of years employment | Age multiplier | (3) PENSION PERCENTAGE | (4) PENSION AMOUNT (#3 x $80,000) | (5) ANTICIPATED YEARS OF PENSION | (6) TOTAL PENSION RECEIVED (#4 x #5) |
|---|---|---|---|---|---|---|
| 55 | 20 | 1.5 | 30% | $24,000 | 24.94 | **$598,560** |
| 60 | 20 | 2.0 | 40% | $32,000 | 21.08 | **$674,560** |
| 65 | 20 | 2.5 | 50% | $40,000 | 17.48 | **$699,200** |
| 70 | 20 | 2.5 | 50% | $40,000 | 14.09 | **$563,600** |
| 75 | 20 | 2.5 | 50% | $40,000 | 10.32 | **$412,800** |
| 80 | 20 | 2.5 | 50% | $40,000 | 8.11 | **$324,400** |

9.  While the total expected pension payments for the retirees at ages 55; 60; and 65 are all within a range of $100,000:

- The teacher who retires at age seventy has an expected lifetime pension which is $135,600 less than the 65 year-old retiree
- The teacher who retires at age seventy five has an expected lifetime pension which is $286,400 less than the 65 year-old retiree; and
- The teacher who retires at age eighty has an expected lifetime pension which is $374,800 less than the 65 year-old retiree.

10.    The reserve needed to support a pension obligation is generally viewed as the economic value of the pension.  The table below, using the salary, age,  and seniority;  and life expectancy information from the Social Security Administration; and assuming a 4% rate of return on the pension fund's assets, leads to the estimates found below for the reserves needed to support the hypothetical pension options.

| AGE | Pensionable Salary | Annual Pension #3 | Years of Payment #4 | Total Expected Pension Payments (#3 X #4) | Present Value of the Payments at 4% - estimate of the reserve |
|---|---|---|---|---|---|
| 55 | $80,000 | $24,000 | 24.97 years | $598.560 | **$395.846** |
| 60 | $80,000 | $32,000 | 21.08 years | $674,200 | **$456.768** |
| 65 | $80,000 | $40,000 | 17.48 years | $699,200 | **$504.113** |
| 70 | $80,000 | $40,000 | 14.09 years | $563,600 | **$431.743** |
| 75 | $80,000 | $40,000 | 10.32 year | $412,800 | **$338,876** |
| 80 | $80,000 | $40,000 | 8.11 years | $324,400 | **$277,571** |

**11.** The age discrimination summarized above is not a rare occurrence. The MTRS' web site discloses that, on December 31, 2025, the MTRS had 1,935 members, each of whom was still teaching, and each of whom was then older than age sixty-five (65)[2] . Each of those MTRS members will face the same, systematic, age discrimination – that I face – at the time each of them retires.

## THE HISTORY OF MY EFFORT TO SECURE A FAIR PENSION FROM THE MASSACHUSETTS TEACHERS' RETIREMENT SYSTEM

**12.** I became aware of the systematic age discrimination implicit in the MTRS' methodology for setting annual pension rates for its members at retirement in 2018.

**13.** In the Spring of 2019, I filed complaints with the Massachusetts Commission Against Discrimination ("MCAD") and the United States Equal Employment Opportunity Commission ("EEOC"). MCAD and the EEOC, each dismissed my complaints.

---

[2] Source URL: http://mtrs.materiell.net/massachusetts-teachers-retirement-system-statistics/

**14.** Later that year I filed a lawsuit in the United States District Court for the District of Massachusetts (Case No. 4:19-cv-40089-TSH).

**15.** On November 20, 2020 United States District Judge Timothy S. Hillman dismissed my case, citing the decision in <u>Kimel v. Florida Board of Regents,</u> 528 U.S. 62, 92. <u>Kimel</u> is a 5-4 decision by the United States Supreme Court, holding that the 11th Amendment prohibits individuals from filing ADEA-based lawsuits against individual states, concluding that individual states, including the Commonwealth of Massachusetts, are:

> ".... *immune from lawsuits in federal courts by her own citizens* **as well as citizens of another State.**"[3] [emphasis added]

---

[3] The 11th Amendment states:

> *"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States **by citizens of another state,** or by citizens or subjects of any foreign state."* [emphasis added].

<u>Kimel</u> continues a long tradition of the United States Supreme Court interpreting the 11th Amendment in a manner which stands the meaning of its unambiguous text on its head. The language of the 11th Amendment prohibits residents of another/different state, suing one of the States in federal court. Its clear text provides no support, whatsoever, for any hypothesis that a resident of a given state may not file a lawsuit in federal court against his or her own state.

16.    I have attached to this Complaint (as Attachment B), a copy of Judge Hillman's decision, which was affirmed on appeal.

17.    Judge Hillman's decision did not consider the question of whether the procedure used by the MTRS constitutes systematic age discrimination.

18.    In each of the two most recent Sessions of the Massachusetts General Court (2023-2024 and 2025-2026), I have filed bills which would eliminate the discrimination in the manner used by the MTRS in calculating pension benefits for its members[4]. The most recent is Bill H2832 in the 2025-2026 Session of the Massachusetts General Court. I have attached a copy of that bill to this Complaint as Attachment C.

19.    Each time I filed this type of legislation, the Massachusetts General Court sent the Bill for a *"study,"*

---

[4] The Commonwealth of Massachusetts' Constitution provides a right for any citizen to present legislation, to his/her State Representative and/or State Senator; each of whom is obligated to file the legislation. On each occasion, my State Senator, Michael Moore, and my State Representative, Paul Frost, filed legislation, intended to eliminate the age discrimination implicit in the manner that the MTRS calculates pension benefits for its members, when those members retire.

which is the term used by the Massachusetts General Court in relation to proposed legislation which will not receive an actual vote, in either the Massachusetts House of Representatives or the Massachusetts State Senate.

20.    On February 3. 2026. I filed a Complaint with the Boston Office of the EEOC.  A copy of that Complaint is attached hereto at Attachment D.

21.    On February 19, 2026, the EEOC Dismissed my complaint.  The stated reason for that dismissal is

*"The EEOC is closing this charge because you have already filed a lawsuit in a state court on this matter."*

That statement is incorrect.  I have attached a copy of the EEOC's Dismissal to this Complaint as Attachment E,

22.    With the notice of Dismissal, the EEOC sent me a document entitled Information Related to Filing Suit Under the Laws Enforced by the EEOC.   The largest paragraph notice of Dismissal (Attachment D) is captioned **NOTICE OF YOUR RIGHT TO SUE**, and informs me that, if I seek further review of my Complaint to the EEOC, I must file a lawsuit in the United States District Court within ninety (90) days of the date on which I received the EEOC's notice of Dismissal.

## ANALYSIS/APPLICABLE LAW

23.    As is explained earlier in this Complaint, the MTRS' methodology and procedures for calculating the annual pension benefit of its individual members, when each member retires, systematically discriminate against MTRS members who retire after their 65th birthday(s).  As the United States Court of Appeals for the 4th Circuit noted in Equal Employment Opportunity Commission -v- Baltimore County;

> *"To prove facial discrimination under the ADEA, a plaintiff is not required to prove an employer's discriminatory animus. Rather, a policy that explicitly discriminates based on age is unlawful regardless of the employer's intent. Ky. Ret. Sys., 554 U.S. at 147–48, 128 S.Ct. 2361 (stating that a "policy that facially discriminates based on age suffices to show disparate treatment under the ADEA")"*

24.    As the Supreme Court stated in Kentucky Retirement System -v- EEOC 554 U.S. 135, 147-148 (2008),  the clear and applicable rule is: *"...that a statute or policy which facially discriminates based on age suffices to show the disparate treatment under the ADEA."*

Massachusetts General Law Section 151 B §4 (1C) states:

*" It shall be an unlawful practice: 1C. For the commonwealth or any of its political subdivisions, by itself or its agent, because of the age of any individual, to refuse to hire or employ or to bar or discharge from employment such individual in compensation or in terms, conditions or privileges of employment **unless pursuant to any other general or special law.*** [emphasis added]"

The Commonwealth and the MTRS have acted, for many years as though the codification of the systematic age discrimination found in MGL Chapter 32 §5, is legal because it is a General Law of the Commonwealth, and gets the benefit of MGL Chapter 15B §4(1C).

25. The discriminatory provisions in MGL Chapter 32 §5 also defy the provisions of the Massachusetts State Constitution; Article 10; Article 11; Article 29 and Article 106. The Declaration of Rights, contained in the Massachusetts State Constitution, stand for the proposition that the government of the Commonwealth will treat all of its citizens equally.

26. The 14th Amendment states in relevant portions:

- *Section 1: .....nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person in its jurisdiction the equal protect of the laws*

- *Section 5: The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article*

27. Congress' enactment of the Age Discrimination in Employment Act (28 U.S.C. §§ 621-634), is a valid excise of its authority to prevent states from engaging in the systematic  age discrimination which lies at the heart of this law suit.

## THE SITUATION, TODAY,  IS DIFFERENT THAN THE SITUATION (IN 2019) WHEN I FILED MY INITIAL FEDERAL LAWSUIT IN THIS MATTER.

28. The Commonwealth has been consciously aware of, for at least seven years, the systematic age discrimination contained the pension benefit calculation process for members of the MTRS who are retiring.

29. With the benefit of this conscious and actual knowledge of the ongoing age discrimination, neither the Commonwealth, nor the MTRS, have taken any action during the  most recent seven (7) years to recognize and correct the age discrimination.

**30.**   During the two most recent sessions of the Massachusetts General Court (2023-2026) I have repeatedly filed corrective legislation.  Those legislative proposals were each effectively buried in "studies."  Each time this occurred the Commonwealth refused to take any corrective action.

## MANDAMOUS IS AN

## APPROPRIATE REMEDY HERE

**31.**   Without offering any opinion and/or explanation as to whether the allegations in my complaint, when proven, establish a case of age discrimination under the Age Discrimination in Employment Act; *29 U.S.C. 621,* EEOC has dismissed my complaint and informed me that I should next proceed in the United Staters District Court.

**32.**   EEOC did this with the knowledge that the decision in Kimel v. Florida Board of Regents, 528 U.S. 62, denies an individual the right to sue a state and/or its departments, commissions, etc., pursuant the ADEA.

**33.**   EEOC did this with the knowledge that, in 2006, it settled litigation relating to age discrimination by the Massachusetts Teachers Retirement System (See Attachment E; [URL: https://www.eeoc.gov/newsroom/eeoc-announces-

age-bias-settlement-state-massachusetts-will-net-millions-victims-0] In connection with that settlement the EEOC stated:

> *"Noting that the Supreme Court has cut off the right of individual employees to sue states under the ADEA, EEOC New York Regional Attorney, Elizabeth Grossman, said, 'The scope of this settlement should put all employers on notice that the EEOC will continue to monitor closely the state's compliance with the ADEA.'"*

34. The EEOC correctly recognized that the inability of individuals to bring lawsuits against states which engage in age discrimination in the administration of their public employee pension plans, makes it more important that the EEOC supervise, and where necessary litigate, with states to assure that there pension plans are not administered in any manner which discriminates based on age.

35. The EEOC Press Release, dated May 22, 2006, stated that the defendants had, at that point, made payments to fifteen (15) claimants. As noted earlier herein, the MTRS has confirmed that, as of December 31, 2025, there were almost two thousand participants in the MTRS pension plan, who were each over age sixty (65) and each still working. Each of

these people is at risk of being discriminated against, in a systematic manner, based on age, when each of them retires.

36.  At least two statutes provide this Court with the authority to issue an Order of Mandamus in this matter:

- **28 U.S.C. §1361** (the Mandamus Act) This statute grants the District Courts original jurisdiction to compel U.S. officers or agents to perform their duties owed to a plaintiff.
- **5 U.S.C. §706(1)**, the Administrative Procedure Act. This statute empowers federal courts to compel action when it is *"...unlawfully withheld or unreasonably delayed."*

37.  The issuance of a Writ of Mandamus is an unusual remedy, only appropriate in unusual circumstances. Those circumstances are present here.

38.  The EEOC has a clear duty, in the circumstances present here, to EITHER:

- Lucidly explain either that (1) the facts I allege are untrue; or (2) why, assuming the facts I allege are true, the conduct I complain about does not constitute age discrimination, under ADEA,  by the MTRS in administering its pension plan; OR

- Given the large number of victims of the discrimination about which I complain (almost two thousand), to file a lawsuit on behalf of the victims here.

39.   This issuance of a Writ of Mandamus is not appropriate, when the Plaintiff has another adequate remedy.  Were it not for the decision in <u>Kimel v. Florida Board of Regents,</u> 528 U.S. 62, I would have the normally-adequate remedy of an appeal.  But I do not have that remedy.

40.   I have attempted, twice, unsuccessfully, to convince the Massachusetts General Court to pass legislation which would eliminate this age discrimination.  My attempts have been fruitless.  With knowledge of the discrimination, the Commonwealth has no inclination to act affirmatively to eliminate that discrimination.

**RELIEF SOUGHT:**  I request that this Court enter two (2) orders:

**THE FIRST** is  in the nature of a declaratory judgment, holding that the combination of MGL Chapter 151B §4 (1C) and MGL Chapter 32 §5  do not insulate conduct which otherwise violates ADEA from judicial review.

**THE SECOND** is the issuance of a Writ of Mandamus to EEOC, directing EEOC to:

- Conduct a full review on the merits of the issue of whether my February, 2026, Complaint sets forth conduct which violates ADEA

- After that investigation is complete, EITHER

  - Issue a dismissal of my complaint in a form that includes a lucid explanation why my complaint fails to set forth conduct which is actionable under the ADEA. (OR)

  - Commence a lawsuit to compel the Commonwealth of Massachusetts and the MTRS to modify the manner in which they calculate the annual pensions of teachers who retire as vested members of the MTRS, and who are over age 65, so that there is no longer age discrimination present in the manner of those calculations.

**THIRD,** any additional relief that the Court deems fair and equitable in this litigation.

Respectfully submitted

By _____

Paul C. Nordberg, Plaintiff, *Pro Se*

3 Overhill Drive

Auburn, MA 01501

Tel: (508) 832-6443

Email: Pcnordberg@gmail.com

Friday; April 24, 20269